**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 14-cv-02914-NYW

MARLENE M. GARCIA,

      Plaintiff,

v.

CAROLYN W. COLVIN, Acting Commissioner of Social Security,

      Defendant.

---

**MEMORANDUM OPINION AND ORDER**

---

Magistrate Judge Nina Y. Wang

      This action comes before the court pursuant to Title XVI of the Social Security Act ("Act"), 42 U.S.C. §§ 1381-83(c), for review of the Commissioner of Social Security's final decision denying Plaintiff Marlene M. Garcia's ("Plaintiff" or "Ms. Garcia") application for Supplemental Security Income ("SSI").  Pursuant to the Order of Reference dated June 5, 2015 [#22], this civil action was referred to the undersigned Magistrate Judge for all purposes pursuant to 28 U.S.C. § 636(c) and D.C.COLO.LCivR 72.2.   The court has carefully considered the Complaint [#1, filed Oct. 27, 2014], Defendant's Answer [#10, filed Feb. 11, 2015], Plaintiff's Opening Brief [#14, filed Apr. 17, 2015], Defendant's Response Brief [#13, filed May 18, 2015], Plaintiff's Reply Brief [#18, filed June 1, 2015], the entire case file, the administrative record, and applicable case law.  For the following reasons, I **REVERSE** the Commissioner's final decision and **REMAND** for further proceedings.

## BACKGROUND AND PROCEDURAL HISTORY

Plaintiff filed an application for SSI under Title XVI of the Act on February 9, 2011. [#11-5 at 149].[1]  Plaintiff was 28 years old when she filed her application for benefits.  [#11-2 at 24].  She alleged in her application that she became disabled in January 2011 due to scoliosis and arthritis in her back.  [#11-3 at 49]; [#11-5 at 149-57]; [#11-6 at 193].  Subsequently, however, Ms. Garcia alleged during the March 2013 administrative hearing before the ALJ that "[t]he scoliosis and the arthritis does play a part," but that "depression is the majority" of the basis of her disability claim "at this point."  [#11-2 at 40].  Plaintiff's SSI application was denied in a notice dated April 21, 2011.  [#11-4 at 69].

On May 4, 2011, Plaintiff filed a request for an administrative hearing.  [#11-3 at 63]. Ms. Garcia did not show up for the hearing, which was set for April 25, 2012.  [#11-2 at 15, 26-28].  The ALJ then issued a Notice to Show Cause for Failure to Appear, informing Ms. Garcia that although she failed to appear at the hearing, she was afforded the opportunity to file a written statement providing good cause for that absence.  [#11-4 at 112].  On May 14, 2012, the ALJ entered an Order of Dismissal on Plaintiff's request for hearing due to her failure to appear. [#11-3].  Ms. Garcia then asked the Appeals Council to review the ALJ's Order of Dismissal, and the Appeals Counsel found that dismissal of Ms. Garcia's request for a hearing was improper

---

[1] This Order utilizes the docket number assigned by the Electronic Court Filing ("ECF") system for its citations to the court file.  For the Administrative Record, the court then refers to the page number associated with the Administrative Record, which is found in the bottom right-hand corner of the page.  For documents outside of the Administrative Record, the court refers to the page number assigned in the top header by the ECF system.

because the claimant's representative appeared at the scheduled hearing even if Ms. Garcia did not. [*Id.* at 66].

The ALJ afforded Ms. Garcia a hearing on March 19, 2013, in which she testified about the reasons why she did not appear for the first hearing, and did not respond to the ALJ's Order to Show Cause. [#11-2 at 36-37]. The ALJ also asked her about her weight, and the number of children she had, but very little else. [#11-2 at 33-47]. The ALJ then asked a vocational expert about potential occupations for Ms. Garcia, but never included any mental health limitation. [*Id.* at 42-45]. The ALJ issued a hearing decision on March 25, 2013, which denied the application for disability benefits at step five of the five-step sequence for determining disability. [*Id.* at 24-25]; *see Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009) (summarizing steps).

At step one, the ALJ determined that Ms. Garcia had not engaged in substantial gainful activity since February 9, 2011, the application date. [#11-2 at 18]. At step two, the ALJ found that Ms. Garcia "has the following severe impairments: (1) Obesity; (2) Degenerative changes of the thoracic and lumbar spine; (3) Depressive disorder; and (4) Anxiety disorder." [#11-2 at 18]. The ALJ noted that the objective medical evidence of record establishes that Ms. Garcia was diagnosed with these impairments and found that these impairments impose more than minimal restrictions on her ability to perform basic work activities and therefore are "severe" impairments within the meaning of the Social Security Regulations. [#11-2 at 18]. The ALJ did not discuss any minor impairments or other ailments that Ms. Garcia claimed to suffer which were not considered impairments. At step three, the ALJ found that Ms. Garcia did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. [#11-2 at 18]. The ALJ then

concluded that Ms. Garcia had the residual functional capacity ("RFC") to perform light work as defined in 20 CFR 416.967(b) except that Ms. Garcia can only work in a low stress environment; is limited to unskilled work with GED levels no higher than R2, M2, and L2; and cannot have frequent or prolonged contact with supervisors, co-workers, or the general public. [#11-2 at 20]. At step four, the ALJ found that Ms. Garcia has no past relevant work. [#11-2 at 24].

At step five, the ALJ determined that considering Ms. Garcia's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that she can perform. [#11-2 at 24]. The ALJ based this determination on testimony from a Vocational Expert that a hypothetical person with the relevant RFC could perform jobs including work on a production assembly, as an electronics worker, and as a housekeeper-cleaner. [#11-2 at 25]. Because the ALJ found that considering Ms. Garcia's age, education, work experience, and RFC, Ms. Garcia is capable of making a successful adjustment to other work that exists in significant numbers in the national economy, the ALJ concluded that a finding of "not disabled" was appropriate. [#11-2 at 25].

On September 18, 2014, the Appeals Council denied Plaintiff's request for review of the ALJ's decision, thereby rendering the ALJ's decision the final decision of the Commissioner. *See* [#11-2 at 1]; 20 C.F.R. § 404.981; *Nelson v. Sullivan*, 992 F.2d 1118, 1119 (10th Cir. 1993). Plaintiff filed this action on October 27, 2014. *See* [#1]. The court has jurisdiction to review the final decision of the Commissioner. 42 U.S.C. §§ 405(g) & 1383(c).

## LEGAL STANDARDS

### I.      Standard of Review

In reviewing the Commissioner's final decision, the court is limited to determining whether the decision adheres to applicable legal standards and is supported by substantial evidence in the record as a whole. *Berna v. Chater*, 101 F.3d 631, 632 (10th Cir. 1996) (citation omitted); *Angel v. Barnhart*, 329 F.3d 1208, 1209 (10th Cir. 2003).   The court may not reverse an ALJ simply because the court may have reached a different result based on the record; the question instead is whether there is substantial evidence showing that the ALJ was justified in his decision. *See Ellison v. Sullivan*, 929 F.2d 534, 536 (10th Cir. 1990).   "Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007) (internal citation omitted).   "Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992) (internal citation omitted).   The court will not "reweigh the evidence or retry the case," but must "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Flaherty*, 515 F.3d at 1070 (internal citation omitted).   Nevertheless, "if the ALJ failed to apply the correct legal test, there is a ground for reversal apart from a lack of substantial evidence." *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993) (internal citation omitted).

II.     **Social Security Disability Appeal Process**

Supplemental Security Income is available to an individual who is financially eligible, files an application for SSI, and is disabled as defined in the Act.   42 U.S.C. § 1382.   An individual is determined to be under a disability only if his "physical or mental impairment or impairments are of such severity that [he] is not only unable to do [his] previous work but cannot, considering [his] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ."   42 U.S.C. §§ 423(d)(2)(A); 1382c(a)(3)(B).

The Commissioner has developed a five-step evaluation process for determining whether a claimant is disabled under the Act.   *See Williams v. Bowen*, 844 F.2d 748, 750-52 (10th Cir. 1988) (describing the five steps in detail).   "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary."   *Id.* at 750.   "Step one requires the agency to determine whether a claimant is 'presently engaged in substantial gainful activity.'"   *Wall*, 561 F.3d at 1052 (quoting *Allen v. Barnhart*, 357 F.3d 1140, 1142 (10th Cir. 2004).   Step two requires the agency to consider whether a claimant has "a medically severe impairment or impairments." *Allen*, 357 F.3d at 1142.   "An impairment is severe under the applicable regulations if it significantly limits a claimant's physical or mental ability to perform basic work activities."   *Wall*, 561 F.3d at 1052 (citing 20 C.F.R. § 404.1521). At step three, the ALJ considers whether a claimant's medically severe impairments "meets or equals an impairment listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1."   *Vigil v. Colvin*, 805 F.3d 1199, 1203 (10th Cir. 2015).

If the claimant's impairments are not equivalent to a listed impairment, at step four of the evaluation process, the ALJ must determine a claimant's Residual Functional Capacity (RFC) and compare the RFC to the claimant's past relevant work.  The RFC is what a claimant is still "functionally capable of doing on a regular and continuing basis, despite his impairments: the claimant's maximum sustained work capability."  *Williams*, 844 F.2d at 751.  "The claimant bears the burden of proof through step four of the analysis."  *Neilson v. Sullivan*, 992 F.2d 1118, 1120 (10th Cir. 1993).

At step five, the burden shifts to the Commissioner to show that a claimant can perform work that exists in the national economy, taking into account the claimant's RFC, age, education, and work experience.  *Neilson*, 992 F.2d at 1120.

> A claimant's RFC to do work is what the claimant is still functionally capable of doing on a regular and continuing basis, despite his impairments: the claimant's maximum sustained work capability. The decision maker first determines the type of work, based on physical exertion (strength) requirements, that the claimant has the RFC to perform. In this context, work existing in the economy is classified as sedentary, light, medium, heavy, and very heavy. To determine the claimant's "RFC category," the decision maker assesses a claimant's physical abilities and, consequently, takes into account the claimant's exertional limitations (i.e., limitations in meeting the strength requirements of work) . . . .
>
> If a conclusion of "not disabled" results, this means that a significant number of jobs exist in the national economy for which the claimant is still exertionally capable of performing. However, . . . [t]he decision maker must then consider all relevant facts to determine whether claimant's work capability is further diminished in terms of jobs contraindicated by nonexertional limitations.
> …
>
> Nonexertional limitations may include or stem from sensory impairments; epilepsy; mental impairments, such as the inability to understand, to carry out and remember instructions, and to respond appropriately in a work setting; postural and manipulative disabilities; psychiatric disorders; chronic alcoholism; drug dependence; dizziness; and pain….

*Williams*, 844 F.2d at 751-52.  The ALJ may rely upon the testimony of a vocational expert to satisfy his burden at step five, so long as the question posed to the vocational expert accurately portrays Plaintiff's limitations as supported by the record.  *See Qualls v. Apfel*, 206 F.3d 1368, 1373 (10th Cir. 2000); *Trimiar v. Sullivan*, 966 F.2d 1326, 1329 (10th Cir. 1992).

## ANALYSIS

Ms. Garcia objects to the ALJ's decision on four grounds: (1) the ALJ did not follow the restrictions in the medical opinion to which he gave great weight; (2) the ALJ'S RFC did not account for the specific mental impairments the ALJ actually found plaintiff to have; (3) the ALJ apparently credited parts of Dr. Vega's opinion but failed to explain why some parts were found credible, but the rest was not; and (4) the ALJ did not properly weigh the conflicting opinions of the physicians.  [#14 at 4].  The court will address these arguments in turn.

I.    **Plaintiff's Argument that the ALJ Did Not Follow the Restrictions in the Medical Opinion to Which He Gave Great Weight**

Plaintiff's first argument is that the ALJ erred by failing to follow the restrictions in the medical opinion of a state agency psychologist, Dr. Sara Sexton, in determining Ms. Garcia's RFC.  [#14 at 21].  According to Plaintiff, this error led to flawed hypothetical questions posed to the Vocational Expert because "[t]estimony elicited by hypothetical questions that do not relate with precision all of a claimant's impairments cannot constitute substantial evidence to support the [Commissioner's] decision."  [#14 at 25 (citing *Hargis v. Sullivan*, 945 F.2d 1482, 1492 (10th Cir. 1991) (citation omitted))].

In assessing Ms. Garcia's RFC, the ALJ stated that he gave "great weight" to Dr. Sexton's opinion, which was based on her review of Ms. Garcia's file, because it was rendered after a thorough review of the record, is consistent with the record as a whole, and State agency

medical and, the ALJ noted, "State agency medical and psychological consultants are highly qualified physicians and psychologists who are experts in the evaluation of the medical issues in disability claims under the Act. [#11-2 at 23-24]. The ALJ noted that Dr. Sexton opined that Ms. Garcia "could perform work that could be learned in up to 3 months and which did not require more than limited interaction with the general public." [#11-2 at 24 (citing #11-3 at 56)]. The ALJ ultimately concluded that Ms. Garcia has the RFC to perform "light work" except that she "can only work in a low stress environment; is limited to unskilled work with GED levels no higher than R2, M2, and L2; and cannot have frequent or prolonged contact with supervisors, co-workers, or the general public." [#11-3 at 56].

On April 19, 2011, Dr. Sexton completed a Mental Residual Functional Capacity Assessment ("MRFCA"). [#11-3 at 55-56]. In the first section of the MRFCA, Dr. Sexton noted that Ms. Garcia is not significantly limited in her ability to: (1) remember locations and work-like procedures; (2) understand and remember very short and simple instructions; (3) carry out very short and simple instructions; (4) perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; (5) sustain an ordinary routine without special supervision; (6) work in coordination with or in proximity to others without being distracted by them; (7) make simple work-related decisions; (8) ask simple questions or request assistance; (9) accept instructions and respond appropriately to criticism from supervisors; (10) get along with coworkers or peers without distracting them or exhibiting behavioral extremes; and (11) maintain socially appropriate behavior and adhere to basic standards of neatness and cleanliness. [#11-3 at 55-56]. However, Dr. Sexton found that Ms. Garcia was "moderately limited" in her ability to: (1) ability to understand and remember *detailed* instructions; (2) carry

9

out *detailed* instructions; (3) maintain attention and concentration for extended periods; and (4) complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods.  [#11-3 at 55-56].

Dr. Sexton wrote in the narrative sections of her opinion that Ms. Garcia "would not have significant difficulty interacting w/ co-workers or supervisors," however, "[s]he may have some difficulty interacting w/ the general public due to low energy levels."  [#11-2 at 56].  Dr. Sexton then opined that:

- Ms. Garcia "retains the mental ability to do work not involving significant complexity or attention to detail which can be learned in up to three months time on the job." [#11-2 at 56].

- Ms. Garcia "should have limited interaction w/ the general public."  [#11-2 at 56].

- Ms. Garcia "can accept supervision and interact w/ co-workers."  [#11-2 at 56].

- Ms. Garcia "can adapt to work related situations as long as work demands are wthin MRFC restrictions."  [#11-2 at 56].

Plaintiff argues that the ALJ committed an error when he stated that he gave "great weight" to Ms. Sexton's opinion, but then failed to include in the RFC her findings regarding Ms. Garcia's moderate limitations regarding dealing with detailed instructions, the ability to maintain attention and concentration for extended periods, the ability to complete a normal work day or workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods.  [#14 at 22].

Plaintiff also argues that the ALJ's RFC failed to account for Dr. Sexton's ultimate conclusion that Ms. Garcia's work cannot involve significant complexity or attention to detail. [#14 at 22].

As the form Dr. Sexton was working from explains, the non-narrative portions of the form in which Dr. Sexton evaluated whether Ms. Garcia showed limitations in various areas of functioning "help determine the individual's ability to perform sustained work activities. However, the actual mental residual functional capacity assessment is recorded in the narrative discussion(s) in the explanation text boxes." [#11-3 at 9]; *see also Carver v. Colvin*, No. 14-5056, 2015 WL 307084, at *2 (10th Cir. Jan. 20, 2015). Dr. Sexton's findings of only moderate limitations in Ms. Garcia's ability to understand, remember, and carry out *detailed* instructions and maintain attention and concentration for *extended periods*, are consistent with her ultimate conclusion that Ms. Garcia "retains the mental ability to do work not involving significant complexity or attention to detail which can be learned in up to three months time on the job." [#11-2 at 56].

Plaintiff asserts that Dr. Sexton's conclusion in Section III does not account for Ms. Garcia's difficulty with instructions, as well as maintaining attention, concentration, attendance and pace, this court notes that Plaintiff misconstrues Dr. Sexton's opinion. Dr. Sexton found that Ms. Garcia had "moderate" limitations in her ability to understand, remember, and carry out *detailed* instructions, as well as maintain attention and concentration for *extended* periods. [#11-3 at 55-56]. However, Dr. Sexton also opined that Ms. Garcia is not significantly limited in her ability to understand, remember, and carry out very short and simple instructions; accept instructions and respond appropriately to criticism from supervisors; get along with coworkers or peers without distracting them or exhibiting behavioral extremes; maintain socially appropriate

behavior and adhere to basic standards of neatness and cleanliness; and perform activities within

a schedule, maintain regular attendance, and be punctual within customary tolerances. [#11-3 at

55-56].

In support of this argument, Plaintiff relies on a footnote appearing in the Tenth Circuit's

decision in *Chapo v. Astrue*, 682 F.3d 1285 (10th Cir. 2012). Plaintiff cites *Chapo* for the

proposition that the ALJ's limitation in the RFC to unskilled work does not account for the

specific mental limitations that Dr. Sexton found. [#14 at 23]. However, subsequent to

Plaintiff's briefing in this case, the Tenth Circuit has clarified its decision in *Chapo*. Because

*Chapo* and related cases are central to Ms. Garcia's arguments here, the court finds it helpful to

include the relevant discussion from the Tenth Circuit's decision in *Evans v. Colvin*:

> On appeal, Ms. Evans argues that the district court erred in concluding there was conflicting Tenth Circuit authority on this issue. She contends that in *Groberg,* we indicated that *Chapo* and *Wayland* were controlling Tenth Circuit authority when we cited those cases in support of the principle that "[a] limitation to 'simple work' or 'unskilled jobs' is generally insufficient to address a claimant's mental impairments." *Groberg,* 505 F. App'x at 770.

> Although *Groberg* cited *Chapo* and *Wayland, Wayland* acknowledged that "there may be circumstances in which a particular mental limitation could be so obviously accommodated by a reduction in skill level that particularized vocational evidence addressing that limitation might be dispensed with." 1996 WL 50459, at *2. And in *Groberg* itself, we said that limiting a claimant to "unskilled jobs" is only "*generally insufficient*" to address mental impairments. 505 F. App'x at 770 (emphasis added). Thus, both *Wayland* and *Groberg* acknowledged there can be an exception to *Chapo*'s suggested general approach.

> These four cases—*Groberg, Chapo, Wayland,* and *Wendelin*—illustrate that, in general, limiting a claimant to unskilled work will not sufficiently convey the degree of a claimant's mental impairments to a VE. But a restriction to unskilled work can account for a mental impairment in an appropriate case, for example, when the relationship between skill level and mental capacity is obvious (as stated in *Wayland* ) or when an ALJ credits a medical-source opinion that a claimant's concentration deficit does not affect the ability to do unskilled work (similar to *Wendelin* ).

12

> We recently discussed this issue in *Vigil v. Colvin,* 805 F.3d 1199, 1204 (10th Cir. 2015), in which we recognized that "[t]here may be cases in which an ALJ's limitation to 'unskilled' work does not adequately address a claimant's mental limitations." Ultimately, however, we held that a limitation to unskilled work adequately accounted for a moderate limitation in concentration, persistence, and pace because the ALJ "found that the findings of a normal ability to recall items on immediate recall, and an ability to spell words forward, as well as finding of normal thought processes, indicated that Vigil retained enough memory and concentration to perform at least simple tasks." *Id.* at 1203–04 (brackets and internal quotation marks omitted).

*Evans v. Colvin*, No. 15-1222, 2016 WL 362438, at *5-6 (10th Cir. Jan. 29, 2016); *see also*

*Berumen v. Colvin*, No. 15-1150, 2016 WL 519381, at *2-3 (10th Cir. Feb. 10, 2016).

The court finds that the present case is one in which the ALJ's limitation to unskilled work accounts for Ms. Garcia's moderate limitations in the ability to understand, remember, and carry out detailed instructions, maintain attention and concentration for extended periods, and complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. Here, similar to *Vigil v. Colvin*, the ALJ specifically referenced Ms. Garcia's ability to "recall items on immediate recall, perform simple multiplication problems, and spell 'world' in reverse," which the ALJ concluded "suggests that she is able to understand, remember, and carry out the relatively simple instructions associated with unskilled work in a low stress setting." [#11-2 at 24]. Moreover, the ALJ stated that he gave "great weight" to Dr. Sexton's opinion that Ms. Garcia "could perform work that could be learned in up to 3 months and which did not require more than limited interaction with the general public. [#11-2 at 24 (citing #11-3 at 56)]. Accordingly, the court finds that the absence of specific references to the mild limitations Dr. Sexton listed in her MRFCA was not an error requiring reversal.

Because the court finds no error in the ALJ's RFC determination as it pertains to Dr. Sexton's opinions, the court similarly finds no error in the ALJ's hypothetical question to the vocational expert on the basis of Plaintiff's argument that the hypothetical questions did not account for limitations in Dr. Sexton's opinions.

## II.     Plaintiff's Argument that the ALJ'S RFC Did Not Account for the Specific Mental Impairments the ALJ Actually Found Plaintiff to Have

Plaintiff's second argument is that the ALJ committed error because the RFC did not account for the specific mental impairments the ALJ actually found Ms. Garcia to have.  [#14 at 27].  Plaintiff asserts that although mental status exams by Dr. Vega and Dr. Valette show that Ms. Garcia has deficits in concentration, persistence and delayed recall, the ALJ's RFC finding did not account for any of these specific deficits in mental functioning and instead only limited plaintiff to unskilled work.  [#14 at 27].  Again, Plaintiff relies on the *Chapo v. Colvin* decision for this argument.  However, as discussed above, Tenth Circuit jurisprudence after *Chapo* has made it clear that where, as here, a limitation to unskilled work adequately accounts for moderate limitations in a claimant's concentration, persistence, and pace, there is no requirement that the RFC include those specific limitations.  *See Evans*, 2016 WL 362438, at *5-6; *Berumen*, 2016 WL 519381, at *2-3.  Accordingly, the court does not find that Plaintiff's second argument is a proper basis for reversal of the ALJ's decision.

## III.    Plaintiff's Argument that the ALJ Failed to Explain Why Some Parts of Dr. Vega's Opinions Were Found Creditable, But the Rest Was Not

Plaintiff's third argument pertains to the ALJ's treatment of an opinion given by Dr. Jose Vega.  On March 13, 2013, Ms. Garcia was seen by Dr. Jose Vega on referral from her attorney.  [#11-8 at 396].  Dr. Vega performed a detailed mental status examination, as well as a review of

a 2011 medical report completed by Brett Valette, Ph.D.  [#11-8 at 396].  Dr. Vega noted that

Ms. Garcia had blunt affect and a depressed mood.  [#11-8 at 399].  He also noted that Ms.

Garcia had difficulties with serial 7's, serial 3's, and counting from 20 to 1 backward.  [#11-8 at

399].  Ms. Garcia appeared to present difficulty with sustaining attention and concentration and

could only recall 3 out of 5 items after a delay.  [#11-8 at 399-400].  Dr. Vega diagnosed Ms.

Garcia with a history of major depression and anxiety and assigned her a global assessment of

functioning (GAF) score of 50.[2]  [+11-8 at 398-400].  Dr. Vega also completed a MRFCA form

in which he noted marked to extreme limitations in 14 of 20 areas of work-related functioning,

including the ability to understand and remember detailed instructions, the ability to maintain

attention and concentration for extended periods, the ability to sustain an ordinary routine

without special supervision, the ability to accept instructions and respond appropriately to

criticism from supervisors, the ability to get along with coworkers or peers without distracting

them or exhibiting behavioral extremes, and the ability to respond appropriately to changes in the

work setting (among others).  [#11-8 at 402-403].

Nevertheless, the ALJ gave "little weight" to Dr. Vega's opinion in determining Ms.

Garcia's RFC.  The ALJ explained:

> On March 12, 2013 Jose Vega, PhD opined that the claimant had marked and/or
> extreme limitations in almost all areas of mental functioning.  Exh. 10F, pp. 7, 8.
> The undersigned gives this opinion little weight.  The opinion was rendered after
> a single examination.  The opinion is not entirely consistent with those exam
> findings, and is even less consistent with the exam findings of other treating and
> examining providers.   The opinion is not explained in significant detail.
> Therefore, the undersigned gives this opinion little weight.

---

[2] A GAF score is a clinician's determination on a scale of 1 to 100 of an individual's overall
level of functioning.  *See Beard v. Colvin*, -- F. App'x. --, 2016 WL 805690, *2 n.1 (10th Cir.
2016); *Langley v. Barnhart*, 373 F.3d 1116, 1122 n.3 (10th Cir. 2004) (citing Am. Psychiatric
Ass'n, *Diagnostic and Statistical Manual of Mental Disorders* 32 (Text Revision 4th ed. 2000)).

[#11-2 at 23].

Plaintiff argues that the ALJ erred by failing to explain why he found some parts of Dr. Vega's opinion creditable, but not other parts. *See* [#14 at 31]. This court agrees that the ALJ did not provide sufficient explanation for rejecting Dr. Vega's opinion. "Although an ALJ need not discuss every piece of evidence, [he] must discuss 'any uncontroverted evidence he chooses not to rely on, as well as significantly probative evidence he rejects." *Clifton v. Chater*, 79 F.3d 1007, 1010 (10th Cir. 1996). The ALJ does not specify how Dr. Vega's opinion is inconsistent with his exam findings or with the exam findings of other treating and examining providers. Nor did he provide a discussion or explanation of why he rejected Dr. Vega's multiple findings of marked to severe impairments.

The court also notes that the ALJ appears to have incorporated at least some of Dr. Vega's opinions in his RFC determination. For example, the ALJ found Ms. Garcia to be impaired in her ability to deal with supervisors, coworkers, and the public. [#11-2 at 20]. Dr. Vega appears to be the only physician who stated that Ms. Garcia's ability to interact with supervisors and coworkers is limited. An ALJ may not accept part of a medical opinion and discount the rest without explaining "why one part of [the] opinion was creditable and the rest was not." *Chapo*, 682 F.3d at 1292.

While the court acknowledges that the ALJ was not required to derive Ms. Garcia's limitation regarding interactions with supervisors and coworkers specifically from a medical provider's opinion, *see Chapo*, 682 F.3d at 1288, the court finds on the record before it that the ALJ's explanation of his treatment of Dr. Vega's opinion shows that he gave *some* weight to Dr. Vega's opinion and may have relied on it in forming his RFC; however, the ALJ failed to

address in a meaningful way why he seemingly accepted some portions of Dr. Vega's opinion and rejected others.

The court therefore remands for either adoption of Dr. Vega's opinions or an explanation of why they are rejected. *See Beard v. Colvin*, 2016 WL 805690, at *2; 20 C.F.R. §§ 416.927(c); 416.920a. Because the court remands on this basis, it does not address Plaintiff's last argument that the ALJ did not properly weigh the conflicting opinions of the physicians.

## CONCLUSION

For the reasons set forth herein, **IT IS ORDERED** that the Commissioner's final decision is **REVERSED** and this matter is **REMANDED** to the Commissioner for further proceedings consistent with this order and judgment.

DATED: March 15, 2016                    BY THE COURT:


                                         s/Nina Y. Wang_____
                                         United States Magistrate Judge